**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **EDITH AIKENS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-553 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____  )

**OPINION**

Plaintiffs Edith Aikens and her minor daughter, T.A., filed this suit, alleging that Defendant District of Columbia denied T.A. a free appropriate public education in violation of the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1400 *et seq*., when the District of Columbia moved T.A. from Transition Academy at Shadd to Ballou Arts and Technology Senior High School without prior written notification to Ms. Aikens or her involvement in the decision.  The District of Columbia responds that such procedures were not required because T.A.'s move from Shadd to Ballou did not constitute a change in educational placement.  The Court agrees with the decision of the Hearing Officer that the schools are not substantially and materially different, and thus no change in educational placement occurred.  As a result, T.A. was not denied a FAPE by any absence of procedural safeguards.  The Court will grant the District's motion for summary judgment.

**I.  FACTS**

**A.  Statutory Framework**

The Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") ensures that "all children with disabilities have available to them a free appropriate public

1

education that emphasizes special education and related services designed to meet their unique

needs and prepare them for further education, employment, and independent living." 20 U.S.C.

§ 1400(d)(1)(A). In designing a free appropriate public education ("FAPE") for students with

disabilities, the child's parents, teachers, school officials, and other professionals collaborate in a

"multi-disciplinary team" to develop an individualized educational program ("IEP") to meet the

child's unique needs. *See id.* § 1414(d)(1)(B). Local school officials utilize the IEP to assess the

student's needs and assign a commensurate learning environment. *See id.* § 1414(d)(1)(A).

While the District of Columbia is required to provide disabled students a FAPE, it

is not required to, and does not, guarantee any particular outcome or any particular level of

academic success. *See Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S.

176, 192 (1982); *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007). If the

parent objects to the identification, evaluation, or educational placement of a disabled child, or

whether she is receiving a FAPE, 20 U.S.C. § 1415(b)(6), the parent may seek an "impartial due

process hearing" before a D.C. Hearing Officer, who issues a Hearing Officer Determination

("HOD"). *Id.* § 1415(f)(1)(A). If the parent is dissatisfied with the HOD, she may appeal to a

state court or a federal district court. *See id.* § 1415(i)(2)(A).

### B.  Factual Background

Plaintiff T.A. was a seventeen-year-old student at the time of the relevant events.

AR 13. T.A. had an emotional disturbance and was therefore disabled and eligible for special

education services under the IDEA. *Id.* In February 2011, a multi-disciplinary team, which

included T.A.'s mother, considered and revised an IEP for T.A. *See* 34 C.F.R. §§ 300.116, .327.

The revised IEP required T.A. to receive specialized instruction outside a general education

setting for 31.5 hours per week, four hours per month of behavioral support services, and speech

and language therapy for 30 minutes per month.  AR 61.  T.A.'s IEP also set academic,

communication, and behavioral goals.  *Id.* at 56-60.

    During the 2010-2011 school year, T.A. was placed at the Transition Academy at

Shadd ("Shadd").[1]  At the end of the 2010-2011 school year, Shadd was closed and moved to the

Ballou Senior High School building.[2]  AR 13.  It is undisputed that Ms. Aikens received notice

that Shadd was closing at the end of the 2010-2011 school year.  Pl. Statement Material Facts

("Pl. SMF") [Dkt. 10] ¶ 5.  The parties dispute, however, whether Ms. Aikens was notified that

Shadd would be moving to Ballou and that T.A. was to start school at BAT in the fall.  *Compare*

Pl. SMF ¶¶ 6-8, 10-11, 16 (asserting that no information was provided to Ms. Aikens regarding

where D.C. Public Schools ("DCPS") had placed T.A.), *with* Def. Cross-Mot. for Summ. J.

("Def. Mot.") [Dkt. 11] at 5 (asserting that Plaintiffs "became aware that . . . the special

education program at Shadd would be moving to Ballou") *and* Def. Reply [Dkt. 15] at 4 ("There

is additional evidence that Plaintiffs received the proper notification from DCPS that Shadd was

closing and its special education students were being relocated to Ballou.").

    In a letter dated August 22, 2011, Ms. Aikens informed DCPS of her decision to

place T.A. at High Road of D.C. Upper School ("High Road").  AR 214-15.  High Road is "a

non-public separate day-school for children with social/emotional disabilities."  *Id.* 16.  DCPS

responded within 24 hours to Ms. Aikens's letter, stating that it would not reimburse her for

---

[1] Ms. Aikens challenged T.A.'s placement at Shadd by filing an administrative complaint on
April 22, 2011.  AR 195.  A HOD dismissed this complaint on June 6, 2011, with prejudice.  *Id.*
at 206.  The Hearing Officer found that Shadd was an appropriate placement for T.A. because it
could implement her IEP.  *Id.* at 203-05.

[2] The name of the school was changed from "Transition Academy at Ballou" to "Ballou Arts and
Technology Academy" when the new school year began.  AR 16.  The Court will refer to the
program after it moved to Ballou as "BAT."

T.A.'s placement at High Road because it believed that BAT could provide T.A. with a FAPE.

*Id.* at 249.  Ms. Aikens, however, sent T.A. to High Road when school opened.

On November 10, 2011, Ms. Aikens filed an administrative complaint challenging

T.A.'s placement at BAT.  After a hearing on January 6, 2012, a HOD dismissed the complaint

with prejudice on January 12, 2012.  The HOD considered two issues: (1) whether the change

from Shadd to BAT constituted a change of placement and if so, whether T.A. was denied a

FAPE by DCPS's failure to notify Ms. Aikens or involve her in the placement decision, and (2)

if T.A. was denied a FAPE, whether Ms. Aikens was entitled to reimbursement for T.A.'s tuition

at High Road.  AR 9.  The Hearing Officer made the following findings of fact regarding Shadd:

> Students at Transition Academy were taught by special education
> and regular education teachers.  There were six licensed social
> workers on staff and one school psychologist.  There were seven to
> eight behavior technicians who were all trained in therapeutic
> crisis intervention (TCI). There were typically 60 students at
> Transition Academy of a capacity of 90 to 110.  The school served
> students with behavior and social/emotional needs in grades nine
> through 12.  Positive intervention strategies and other supports
> were used with the student at Transition Academy.  The School
> had a designated room for therapeutic intervention for students in
> crisis or other disciplinary or social/emotional needs.  The School
> was housed in a renovated elementary school with no other school
> programs and some administrative offices.

AR 13-14.  The Hearing Officer made the following findings of fact regarding BAT:

> BAT is a secondary school program serving students with
> disabilities outside of the general education setting.  The school is
> housed in the Ballou Senior High School and is maintained
> separately from the high school with security guards between the
> schools.  Students at BAT may only interact with non-disabled
> peers when entering or leaving the building or if their IEPs require
> they be in a less restrictive setting for part of the day.  All students
> at BAT are supposed to be involved in and progressing in the
> general education curriculum.  Additionally, there are remedial
> courses and vocational courses for students.  Students do not attend

classes with non-disabled peers unless their IEPs permit, and classes are provided with specialized instruction as necessary, including electives.   The students are provided behavioral and social/emotional supports including the use of behavior technicians and a special intervention room for processing with students. There [are] 31.5 hours per week of school time at BAT, but only 28 hours of instructional time for the normal school week.   There are currently 90 students enrolled at BAT.   Not all teachers have District of Columbia teaching licenses but they do have licenses from other states.   Some classes are only taught by a special education teacher and some are co-taught with a regular education teacher and special education teacher.   There are four social workers at BAT, four behavioral technicians, and a school psychologist who serves both BAT and Ballou Senior High School.   The students are on a "block schedule" at BAT, requiring alternate days of classes and classes are 80 minutes long.

*Id.* at 16-17.

In comparing the schools, the Hearing Officer did not find any of the differences between the two to be material or substantial.   The Hearing Officer therefore found that no change in placement had occurred when T.A. moved from Shadd to BAT.   *Id.* at 20. Accordingly, the Hearing Officer concluded that there was no violation or denial of a FAPE when the move of T.A. to BAT did not involve Ms. Aikens and that "prior written notice under IDEA was not required."   *Id.* at 21.

The Complaint was filed on April 10, 2012 and appeals the HOD issued on January 12, 2012.   Plaintiffs filed a motion for summary judgment on November 1, 2012.   The District of Columbia opposed the motion and cross-moved for summary judgment on December 21, 2012.   Both motions are fully briefed and ready for decision.

## II.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In evaluating a hearing officer's decision in an IDEA case such as this one, a court reviews the administrative record, may hear additional evidence, and bases its decision on the preponderance of the evidence, granting such relief as deemed appropriate.  20 U.S.C. § 1415(i)(2)(C).  "Where, as here, neither party seeks to present additional evidence, a motion for summary judgment operates as a motion for judgment based on the evidence compromising the record." *Parker v. Friendship Edison Public Charter Sch.*, 577 F. Supp. 2d. 68, 72 (D.D.C. 2008) (internal quotation marks and citation omitted).

The burden of proof is with the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989) (internal quotation marks omitted)). The court gives "due weight" to the decision of the hearing officer and does not substitute its own view of sound educational policy for that of the hearing officer.  *See Rowley*, 458 U.S. at 206.

## III.  ANALYSIS

Ms. Aikens and T.A. claim that T.A.'s move from Shadd to BAT constituted a change in T.A.'s educational placement.  Thus, they contend, DCPS's failure to involve Ms. Aikens in the decision and failure to provide her with prior written notice of the change resulted in a denial of T.A.'s right to a FAPE.  The IDEA requires parental involvement regarding any decisions "on the educational placement of their child."  20 U.S.C. § 1414(e); *see also* 34 C.F.R.

§ 300.116(a)(1) (requiring the public agency to ensure that the placement decision is made by a group of people to include the parents); *id.* § 300.327 (same).  Additionally, the IDEA requires the provision of written prior notice to a parent whenever a local educational agency changes the child's "educational placement."  20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.503(a)(1).  If an agency fails to follow these procedural safeguards when applicable, the agency has failed in its statutory obligation to provide a FAPE.  *See* 20 U.S.C. § 1415(a).

The parties dispute whether and to what extent prior written notice was provided to Ms. Aikens regarding the move of T.A. to BAT.  The District of Columbia does not dispute, however, that Ms. Aikens was not involved in any decision to move T.A. to BAT.  The critical inquiry as to either claim is whether T.A.'s move from Shadd to BAT constituted a change in her "educational placement," such that DCPS was required to take certain procedural steps prior to making any change.

A few courts have considered the meaning of "educational placement" under the IDEA.  *Concerned Parents v. New York City Board of Education*, 629 F.2d 751, 756 (2d. Cir. 1980), held that "the term 'educational placement' refers only to the general educational program in which the handicapped child is placed and not to all the various adjustments in that program that the educational agency, in the traditional exercise of its discretion, may determine to be necessary."  *See also White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003) ("'Educational placement,' as used in the IDEA, means educational program—not the particular institution where that program is implemented.").   Consistent with its prior ruling, the Second Circuit more recently explained that educational placement refers to "the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school."  *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009).

This Circuit in *Lunceford v. District of Columbia Board of Education*, 745 F.2d 1577, 1582 (D.C. Cir. 1984), recognized that "[t]he leading precedent on what type of change constitutes a change in educational placement is *Concerned Parents v. New York City Board of Education*" and explained that a change in educational placement occurs only when there is a change to the general educational program.   Building upon the reasoning in *Concerned Parents*, this Circuit required the appellee in *Lunceford* to "identify, at a minimum, a fundamental change in, or elimination of [,] a basic element of the education program in order for the change to qualify as a change in educational placement." *Lunceford*, 745 F.2d at 1582; *see also* Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46,540, 46,589 (Aug. 14, 2006) (codified at 34 C.F.R. Parts 300 and 301) ("[I]t is the [U.S.] Department [of Education]'s longstanding position that maintaining a child's placement in an educational program that is *substantially and materially* similar to the former placement is not a change in placement." (emphasis added)).

Ms. Aikens and T.A. concede that a student's educational placement is not "equivalent to the physical site location" and assert that they are not claiming entitlement to relief "because the Student's physical location changed" but instead that "substantial elements of his [sic] educational setting changed." Pl. Opp'n [Dkt. 13] at 3.  Ms. Aikens and T.A. assert that the differences between Shadd and BAT were "sufficient for the change to constitute a change of placement, for which parental participation was required." Pl. Mot. for Summ. J. ("Pl. Mot.") [Dkt. 10] at 9.  They emphasize differences in "the amount of contact they offered with disabled peers, the disabilities served, and the availability of a crisis center for the students." *Id.*  The District of Columbia responds that such differences are only "presumed" and do not exist in fact. Def. Mot. at 13.  In the alternative, the District argues that "even if these cosmetic differences

did exist, they are irrelevant because they have *nothing* to do with the services to be provided pursuant to the February 18, 2011 IEP." *Id.*

The Hearing Officer considered the differences identified by Ms. Aikens between Shadd and BAT. He recognized that BAT is housed within a mainstream high school while Shadd had its own building. The Hearing Officer determined that this difference was inconsequential, however, because BAT and Ballou "do not share the same space within the building and access between the two schools is controlled." AR 19. Addressing whether the crisis intervention resources offered by Shadd and BAT and the focuses of the two schools differed significantly, as Ms. Aikens claimed, the Hearing Officer found that both schools "provide strong behavioral and social/emotional support for students and utilize a special space for behavior management." *Id.* He added that any particular differences in the behavior management spaces were not "material or substantial." *Id.* Finally to the argument that the amount of classroom programming offered at BAT is less than that offered by Shadd, the Hearing Officer reasoned that BAT could simply provide additional specialized instruction before or after the normal school day to ensure that T.A.'s IEP is implemented.[3] *Id.* at 20.

The Court finds no reason to quarrel with the judgment of the Hearing Officer that the educational programs for T.A. at Shadd and BAT were not "materially or substantially" different and that no change in educational placement occurred. *See id.* Ms. Aikens and T.A. have not shown that "the [H]earing [O]fficer was wrong," *Reid*, 401 F.3d at 521, because they neither offer nor point to any evidence in the record that would undermine his factual or legal conclusions. None of the variations between Shadd and BAT rises to the level of substantially and materially different.

---

[3] Similarly, the Court concludes that BAT's "block schedule" does not make its educational program substantially and materially different from the one offered at Shadd.

Further, Ms. Aikens and T.A. have not shown that "a fundamental change in" or an "elimination of" any basic element of T.A.'s educational program occurred when T.A. was moved from Shadd to BAT.  *See Lunceford*, 745 F.2d at 1582.  Rather, T.A. would have continued to experience the same general educational program at BAT as she experienced at Shadd—specialized instruction outside of the general educational setting by certified teachers with a support staff of social workers, behavioral technicians, and a school psychologist.  In the absence of a "fundamental change in" or "elimination of" a basic element of T.A.'s educational program at Shadd when it moved to BAT, there has been no change in educational placement. Without such a change, DCPS was not required to provide prior written notice or involve Ms. Aikens in the decision to move T.A. from Shadd to BAT.  T.A. was not denied a FAPE.

Because the Court concludes that there was no denial of a FAPE, Ms. Aikens is not entitled to reimbursement for T.A.'s tuition at High Road.[4]  *See* 20 U.S.C. § 1412(a)(10)(C)(i) (a local educational agency is not required to pay for the cost of education at a private school "if that agency made a free appropriate public education available to the child" and the parents chose to send the child to a private school).

---

[4] Ms. Aikens criticizes the suggestion in a footnote of the HOD that even if T.A. was denied a FAPE, reimbursement would not be warranted because Ms. Aikens could have taken affirmative steps to ascertain the new location for T.A.'s placement upon the closing of Shadd.  *See* Pl. Mot. at 13; AR 20 n.47 ("[A]ssuming it is true [Ms. Aikens] did not know which school to send her child to for the 2011-2012 school year, the reasonable approach would be to contact the Respondent and find out, not enroll [T.A.] in a non-public school and then contact the Respondent on about the first day of school to demand public funding for such a placement when that very remedy was recently denied in another hearing over the appropriateness of placement.").  Any criticism of this statement in the HOD is irrelevant because the Court concludes that no denial of a FAPE occurred.

### IV.  CONCLUSION

For the reasons stated above, the Court will grant the District of Columbia's Cross-Motion for Summary Judgment, Dkt. 11, and deny Plaintiffs' Motion for Summary Judgment, Dkt. 10.  Judgment will be entered in favor of the District of Columbia.  A memorializing Order accompanies this Opinion.


DATE: June 21, 2013

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
